_____



SO ORDERED,

Judge Jason D. Woodard

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.
_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| JAMES BAILEY and | ) | Case No.: | 14-13318-JDW |
| GWENDOLYN J. BAILEY, | ) | | |
| | ) | | |
| Debtors. | ) | Chapter: | 13 |

_____

| | | | |
|---|---|---|---|
| KENDRICK SALES, | ) | | |
| WILLIAM WHITE, JR., | ) | | |
| WAYNE TUBBS, JR., | ) | | |
| THOMAS BROWN, | ) | | |
| ADOLFO GARCIA, | ) | | |
| GUSTAVO HERNANDEZ, | ) | | |
| LUIS HERNANDEZ, | ) | | |
| KENNETH JONES, | ) | | |
| JOHN LANE, JR., | ) | | |
| GREGORIO LUNA, | ) | | |
| HOMERO SANCHEZ, | ) | | |
| | ) | | |
| Plaintiffs. | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 14-01085-JDW |
| | ) | | |
| JAMES BAILEY, | ) | | |
| | ) | | |
| Defendant. | ) | | |

1

## MEMORANDUM OPINION AND ORDER DENYING
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (A.P. DKT. # 30)

This matter comes before the Court on the *Motion for Summary Judgment* (the "Motion")(A.P. Dkt. # 30), filed by Kendrick Sales, *et al.* (the "Creditors") in the above-styled adversary proceeding against defendant-debtor James Bailey (the "Debtor").[1] The Debtor filed a *Response* (A.P. Dkt. # 35) and a *Brief in Support of Response to Motion for Summary Judgment* (A.P. Dkt. # 36). On January 26, 2016, the Creditors filed a *Reply* (A.P. Dkt. # 38). The Creditors assert that the debt the Debtor owes to them is nondischargeable pursuant to § 1328(a)(4) of the Bankruptcy Code.[2] For the reasons set forth below, the Motion is due to be denied.

### I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157 and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference dated August 6, 1984. This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A) and (I).

### II. FINDINGS OF FACT[3]

The following facts are undisputed or have been previously found by the United States District Court for the Northern District of Mississippi (the "District

---

[1] Citations to the docket in the main bankruptcy case will be to "Bankr. Dkt. #___" and citations to the adversary proceeding will be to "A.P. Dkt. #___".

[2] The "Bankruptcy Code" is defined as Title 11 of the United States Code. Unless otherwise indicated, all chapter, section, and rule references are to the Bankruptcy Code, 11 U.S.C. § 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7052.

Court").[4] The eleven individuals who make up the Creditors in this action were all previously employed by the Debtor. On August 2, 2012, the Creditors filed a complaint against the Debtor in the District Court, alleging a violation of the Fair Labor Standards Act ("FLSA").[5] The Creditors claimed that the Debtor failed to pay them overtime wages that they were owed under the FLSA. After a three day bench trial, the Honorable Sharion Aycock found in favor of the Creditors and entered Findings of Fact and Conclusions of Law on August 8, 2014. *Sales v. Bailey,* 2014 WL 3897726 (N.D. Miss. Aug. 8, 2014). The District Court held, *inter alia,* that the Debtor used a sham business to avoid paying the Creditors overtime wages that were rightly owed to them. *Id.* at *7. The District Court awarded damages to the Creditors as follows:

1. Adolfo Garcia: $3,781.02

2. Gustavo Hernandez: $4,184.50

3. Luis Hernandez: $1,553.24

4. Gregorio Luna: $105.60

5. Homero Sanchez: $981.37

6. John Lane: $962.00

7. Eddie White: $662.91

8. Kendrick Sales: $361.83

---

[4] The Debtor does not dispute the facts as stated by the Creditors in their *Brief in Support of Motion for Summary Judgment*, but does assert that the District Court did not make any findings about whether the injury to the Debtor caused any physical or emotional harm.

[5] *Kendrick Sales, William E. White, Jr., Wayne Tubbs, Jr., et. al v. James Bailey, Delta Products Tree Service, LLC, and MS Right of Way Professionals, LLC*, Civil Action No.: 2:12-CV-00056-SA-SAA.

   9. Thomas Brown: $941.03

   10. Wayne Tubbs: $1,143.58

   11. Kenneth Jones: $134.48

*Id.* at *13.  The damages for owed overtime wages totaled $14,811.56.  *Id.*

  According to 29 U.S.C. § 216(b), an employer that fails to pay overtime wages as required by § 207 of the FLSA may be liable for "an additional equal amount as liquidated damages." *Id.*  After holding that the Debtor's efforts to circumvent his obligations to pay overtime wages were "nothing more than an elaborate ruse," the District Court awarded additional liquidated damages of $14,811.56.  *Id.* at 14.  Further, because the District Court found that the Debtor "exhibited a reckless disregard for whether [his] conduct violated the FLSA," the violation was held to be willful.[6]  *Id.* at 14.

  On September 4, 2014, the Debtor filed a chapter 13 bankruptcy petition with this Court (Bankr. Dkt. # 1).  The Creditors then filed their original Complaint to determine the dischargeability of the District Court judgment (A.P. Dkt. # 1).  In the Complaint, the Creditors argued that the District Court judgment was nondischargeable pursuant to § 523(a)(6).[7]  *Id.*  The Creditors then filed a Motion for Summary Judgment, alleging that relief was due on the grounds cited in their

---

[6] The willfulness of the violation did not affect the amount of damages awarded.  Instead, it was only relevant to determine the appropriate statute of limitations.  *See id.* at *15.

[7] Section 523(a)(6) excludes from discharge any debt "for willful and malicious injury by the debtor to another entity *or to the property* of another entity."  11 U.S.C. § 523(a)(6) (emphasis added).

4

Complaint (A.P. Dkt. # 9). The Motion for Summary Judgment was denied because § 523(a)(6) does not apply to chapter 13 bankruptcies (A.P. Dkt. # 22).

The Creditors then, after successfully requesting leave from the Court, amended their complaint to cite § 1328(a)(4) as the grounds for their relief (A.P. Dkt. # 29). Shortly thereafter, they filed this second Motion (A.P. Dkt. # 30).

### III. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure[8] governs the process by which a court will grant or deny a motion for summary judgment. Summary judgment is only appropriate:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322. When considering a motion for summary judgment, the Court must consider all the evidentiary matters with which it is presented, including, *inter alia*, admissions in pleadings, answers to interrogatories, depositions and affidavits. *Kennett-Murry Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). The burden of proof falls on the moving party, and "all reasonable doubts as to the existence of a genuine issue of material fact 'must be resolved against the moving party.'" *Id. (*quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)). The Court must view the evidence in the light most favorable to the non-moving party. *Id.* Only if no genuine issue of material fact exists is the moving party is entitled to judgment as a matter of law.

---

[8] Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings in bankruptcy cases by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

5

## IV. CONCLUSIONS OF LAW

The Motion raises two issues: 1) whether the bad acts referenced in the District Court judgment are nondischargeable as a "personal injury" in the context of § 1328(a)(4), and 2) whether collateral estoppel applies to the District Court's finding as to the willful nature of the Debtor's actions. Because the Court finds that the Debtor's bad acts did not result in a "personal injury" as the term is used in § 1328(a)(4), there is no need to consider the second issue.

### A. Interpreting "Personal Injury" in 1328(a)(4)

Section 1328 governs discharges in chapter 13 cases and enumerates certain debts that are excluded from discharge. Section 1328(a)(4) specifically excepts from discharge any debt "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused *personal injury* to an individual or the death of an individual." 11 U.S.C. § 1328(a)(4)(emphasis added).

It is well-settled that § 1328(a)(4) excludes debts "arising from injuries to property from the scope of the statute." *Seubert v. Deluty (In re Deluty),* 540 B.R. 41, 47 (Bankr. E.D.N.Y. 2015). By limiting the particular discharge exception to personal injuries and death, Congress created an important distinction between a personal injury and injuries to property. This distinction is reinforced by § 1328(a)(2), where § 523(a)(6) debts (for willful and malicious injury to the property of another) are left off the list of debts excepted from discharge in a chapter 13 case.

6

By excluding § 523(a)(6), Congress has allowed certain debts arising from injuries to property to be discharged in chapter 13 cases.

What is unclear about § 1328(a)(4) is whether the term "personal injury" (1) refers solely to bodily injury; (2) includes non-bodily injury but excludes financial injuries; or (3) covers all injuries that are treated as personal injuries under non-bankruptcy law. *Toste v. Smedberg (In re Toste),* 2014 WL 3908139, at *3 (B.A.P. 9th Cir. Aug. 12, 2014). At the outset, the Court recognizes that "exceptions to discharge should be confined to those plainly expressed." *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)(internal citation omitted). As such, exceptions to discharge "are construed strictly against the creditor and liberally in favor of the debtor." *Cadle Co. v. Duncan (In re Duncan),* 562 F.3d 688, 695 (5th Cir. 2009).

With that in mind, there are three recognized approaches to interpreting "personal injury" in § 1328(a)(4). *Adams v. Adams (In re Adams),* 478 B.R. 476, 486 (Bankr. N.D. Ga. 2012). First, the narrow approach requires a physical injury to the individual. *Massey Energy Co. v. W. Va. Consumers for Justice,* 351 B.R. 348, 351 (E.D. Va. 2006); *Vinci v. Town of Carmel (In re Vinci),* 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989); *Priest v. Interco, Inc. (In re Interco),* 135 B.R. 359, 362 (Bankr. E.D. Mo. 1991); *Perino v. Cohen (In re Cohen)*, 107 B.R. 453, 455 (Bankr. S.D.N.Y. 1989). Second, the middle approach reads "personal injury" to include some non-physical injuries such as defamation,[9] sexual harassment,[10] age

---

[9] *Adelson v. Smith (In re Smith),* 389 B.R. 902, 908 (Bankr. D. Nev. 2008).
[10] *Stranz v. Ice Cream Liquidation, Inc. (In re Ice Cream Liquidation, Inc.),* 281 B.R. 154, 164 (Bankr. D. Conn. 2002).

7

discrimination,[11] and emotional distress,[12] but not business or financial injuries. *Woody v. Woody (In re Woody),* 2013 WL 5946127, at *7 (Bankr. N.D. Ala. Nov. 6, 2013); *Adams,* 478 B.R. at 487; *Ice Cream Liquidation, Inc.,* 281 B.R. at 160–64 (discussing the different approaches for analyzing "personal injury tort" in 28 U.S.C. § 157(b)); *Smith,* 389 B.R. at 908; *Elkes Dev., LLC v. Arnold (In re Arnold),* 407 B.R. 849, 853 (Bankr. M.D.N.C. 2009). Under the middle approach, the court looks to the underlying cause of action that led to the injury to determine whether the injury was in fact personal or was simply injury to property. *Adams,* 478 B.R. at 487. Third, the broad approach includes business and financial injuries if they are defined as a personal injury tort under non-bankruptcy law. *In re Gary Brew Enters. Ltd.,* 198 B.R. 616, 618-19 (Bankr. S.D. Cal. 1996)(holding that a claim under 42 U.S.C. § 1983 is a personal injury tort claim); *In re Nifong,* 2008 WL 2203149 (Bankr. M.D.N.C. May 27, 2008)(same).

While the Court of Appeals for the Fifth Circuit has not yet selected a test, most courts have adopted the middle approach, finding that the narrow approach is overly restrictive and the broad approach places more emphasis on case-specific, non-bankruptcy law and detracts from the text of the Bankruptcy Code. *See e.g., Adams,* 478 B.R. at 487. This Court agrees. The middle approach is most consistent with the language of the Bankruptcy Code and how "personal injury" is used throughout the text. The middle approach is also the most practical, allowing for case-by-case determinations and not elevating form over substance.

---

[11] *In re Pilgrim's Pride Corp.,* 453 B.R. 684, n. 2 (N.D. Tex. 2011).
[12] *Adams,* 478 B.R. at 487.

The plain language of the Bankruptcy Code provides two crucial reasons for adopting the middle approach. First, Congress used a more restrictive term—"personal bodily injury"—in § 522(d)(11), to reflect a more limited category of personal injuries. Instead of using the same restrictive term in § 1328(a)(4), Congress chose to simply use "personal injury." *Deluty,* 540 B.R. at 47. Congress's word choice should be viewed as intentional. *Russello v. U.S.,* 464 U.S. 16, 23 (1983)(citing *U.S. v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972): "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion"). The addition of the term "bodily" in one section and its exclusion in another requires a broader application for "personal injury" than the more restrictive "personal bodily injury." *Deluty,* 540 B.R. at 47.

Second, § 1328(a)(4) should be interpreted in a manner that is consistent with § 1328(a)(2), where Congress excluded § 523(a)(6) debts from the list of debts that are excepted from a chapter 13 discharge. *Adams,* 478 B.R. at 486. Accordingly, a debt arising from a "willful and malicious injury by the debtor to another entity or to the property of another entity" can be discharged in chapter 13, and § 1328(a)(4) must be read with this context in mind. Clear provisions such as this should be used to clarify obscure provisions, where possible. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Ass'n, Ltd.,* 484 U.S. 365, 371 (1988)("A provision that may seem ambiguous in isolation is often clarified by the remainder

9

of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law")(internal citations omitted). As a result, "personal injury" in § 1328(a)(4) "should be defined in contradistinction to injury to property; the emphasis in § 1328(a)(4) is on injury to an individual." *Adams,* 478 B.R. at 486.

These two observations support the use of the middle approach and discourage following the narrow and broad approaches.

B.  Fifth Circuit Decisions Interpreting "Personal Injury"

Although the Fifth Circuit has not examined the meaning of "personal injury" in § 1328(a)(4), or adopted any of the three approaches, it has interpreted the term "personal injury" in other statutes. When doing so, the Fifth Circuit's reasoning harmonizes with the middle approach and this Court's holding today. The few Fifth Circuit cases that interpret "personal injury" all address how that term is used in 26 U.S.C. § 104(a)(2), a tax code provision that deals with calculating gross income. That statute provides that gross income does not include any income received "on account of personal injuries or sickness." 26 U.S.C. § 104(a)(2).

In *Dotson v. U.S.*, the Fifth Circuit considered whether "dignitary loss suffered by . . . discrimination" was a personal injury. 87 F.3d 682, 688 (5th Cir. 1996). The Fifth Circuit held that the portion of damages meant to compensate for the discriminatory firing was "on account of personal injury." *Id.* at 689. However, compensation for back wages was treated differently. *Id.* The Fifth Circuit found the Supreme Court case of *Comm'r v. Schleier* to be on point, and there the

10

Supreme Court held that a mere loss of wages was not a personal injury. *Dotson,* 87 F.3d at 689; *see Schleier,* 515 U.S. 323, 336 (1995). Therefore, the award meant to "compensate for dignitary injuries and nonpecuniary loss" was on account of personal injury, but the award for back wages was not. *Dotson,* 87 F.3d at 689.

*Dotson* follows a line of reasoning similar to that embodied in the middle approach. Although the injury was not physical, the Fifth Circuit found that the harm inflicted by the discrimination was a personal injury but that the unpaid wages were not a personal injury.

In two other opinions the Fifth Circuit has taken similar positions regarding the nature of a personal injury. *See Chamberlain v. U.S.,* 401 F.3d 335 (5th Cir. 2005); *Wesson v. U.S.,* 48 F.3d 894 (5th Cir. 1995). In *Chamberlain*, the Fifth Circuit held that the excluded damages referenced in 26 U.S.C. 104(a)(2) were "damages that substitute for otherwise untaxed personal qualities, goods or assets . . . ." *Chamberlain,* 401 F.3d at 344. In contrast, prejudgment interest from the personal injury award is "more naturally associated with an injured party's opportunity cost for the lost use of funds" than it is with "untaxable 'human capital.'" *Id.* In a separate opinion interpreting the same provision, the Fifth Circuit relied on a Treasury Regulation to link "identification of a personal injury to traditional tort principles," in contrast with traditional contract principles. *Wesson,* 48 F.3d at 897 (relying on *U.S. v. Burke,* 504 U.S. 229 (1992) and 26 C.F.R. § 1.104-1(c)).

While *Dotson, Chamberlain,* and *Wesson* do not address the Bankruptcy Code provision that is before this Court, they still help guide the interpretation of "personal injury." One important difference that must be noted is that the tax provision that was in question in these Fifth Circuit cases provided a different context and purpose. Although 26 U.S.C. § 104(a)(2) contains some elements that are shared in common with § 1328(a)(4), the Fifth Circuit's interpretation was often driven by a treasury regulation and other interpretive aids that cannot easily be applied to § 1328(a)(4). Nevertheless, while these Fifth Circuit opinions only have limited use in the current case, they are instructive as reference points.

C. Applying the Middle Approach to the Debt Owed to the Creditors

In applying the middle approach to the debt in question, it is clear that the injury to the Creditors was economic instead of personal. The Creditors were harmed by the Debtor not paying overtime wages that the Creditors had rightfully earned. There was no physical injury and no discrimination to the Creditors' names or dignity that rose to the level of a personal injury. Although the Debtor's conduct was deceitful, it was not personal. After reviewing the case law and applying the more flexible middle approach, the debt in question does not spring from a personal injury.

The court's opinion in *Woody* is a helpful parallel to the nature of the Creditors' injuries. In *Woody,* the defendant-debtor had previously withheld profits from her former husband. *Woody,* 2013 WL 5946127, at *6-7. The profits were owed to the former husband from a restaurant that the two owned and operated

12

together. *Id.* at *2. In the divorce decree, the court ordered the debtor to pay to her former husband his share of the profits that she withheld while the two were married. *Id.* The debtor later filed for bankruptcy and the former husband commenced an adversary proceeding to determine the dischargeability of that debt. *Id.* After considering § 1328(a)(4), the court adopted the middle approach and found that the debt was an injury to property only. *Id.* at *7. The former husband's judgment sprang from an injury to his property, specifically the profits from the restaurant. *Id.* As a result, the injury was not personal but merely economic. *Id.*

In the same vein, the damages awarded in the District Court judgment do not reflect a personal injury to the Creditors. Unpaid overtime wages result in an economic loss but cannot be said to be personal, such as sexual harassment, defamation, emotional distress, or the like have been held to be personal.[13] To the contrary, withholding wages is an injury to property. *Schleier,* 515 U.S. at 336.

## V. CONCLUSION

The term "personal injury" in § 1328(a)(4) may include non-physical injuries, so long as the underlying cause of action is personal in nature and not economic only. Here, the injury to the Creditors was economic only, namely unpaid wages. Although the Debtor clearly committed bad acts and violated the FLSA, the term

---

[13] Although the Court adopts and applies the middle approach, the Creditors' injuries would likely not come within the scope of "personal injury" under the other approaches as well. Clearly the narrow approach would exclude the Creditors' injuries because they were not physical or bodily injuries. Under the broad approach, where the analysis focuses on whether the injury is considered a personal injury tort under nonbankruptcy law, the injury would likely not be personal either. The nonpayment of overtime wages is generally a contractual claim, not a personal injury tort. Even when a plaintiff seeks a remedy under the FLSA, the underlying claim is considered individually; and while a discrimination or retaliation claim under the FLSA may implicate a personal injury tort, the same cannot be said for an FLSA claim asserting unpaid overtime wages. *Cf. Byrne v. Comm'r,* 883 F.2d 211, 213-15 (3d Cir. 1989).

"personal injury" simply cannot be stretched so far as to include unpaid overtime wages. To do so would ignore Congress's restriction of § 523(a)(6) in chapter 13 cases and would also negate the term "personal" from § 1328(a)(4).

Today's holding does not mean that the Creditors' claims are discharged. It means that the claims are dischargeable. The Debtor must successfully complete his chapter 13 case before receiving a discharge of the Creditors' claims as well as the other claims in the case.

The Court is charged with viewing all evidence in the light most favorable to the nonmoving party and "may not weigh the evidence or make credibility determinations." *Comeaux v. Sutton*, 271 F. App'x 468, 468 (5th Cir. 2008)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Because the Creditors fail to carry their summary judgment burden, the Motion is due to be denied. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED**, that the Motion (A.P. Dkt. # 30) is **DENIED**.

##END OF ORDER##